Robert E. LOWE, Plaintiff,

v.

The CITY OF MACON, GA., et al., Defendants.

No. 85–22–1–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Sept. 20, 1989.

Charles T. Erion, Macon, Ga., Clifford H. Hardwick, Roswell, Ga., for plaintiff.

Craig N. Cowart, H. Jerome Strickland, W. Warren Plowden, Jr., Macon, Ga., for defendants.

ORDER

OWENS, Chief Judge.

Pending before the court is defendants' motion for reconsideration of this court's denial of their motion for summary judgment. In the court's order of December 18, 1987, denying defendants' original motion for summary judgment, the court found that an issue of fact exists as to the defendants' purpose in conducting the

search of plaintiff's office, desk, and gym bag.[1] Plaintiff contends that the purpose of the search was to gather evidence of criminal activity for later criminal prosecution. Plaintiff supports this conclusion by pointing to the fact that the FBI had been contacted early on about the on-going investigation into illegal wiretapping. Defendants contend that the search was conducted pursuant to the employer's interest in protecting itself from employee's work-related misconduct.

In their motion for reconsideration and summary judgment defendants do not contend that an issue of fact regarding the purpose of the search does not exist. Instead, defendants contend that even if the disputed fact question is resolved by a jury in plaintiff's favor, defendants would be entitled to a judgment in their favor as a matter of law.

The defendants assert that in a mixed motive case where the police are searching one of their own, the government's interest in police integrity dictates that the highest standard which should be applied is the reasonable suspicion standard and therefore probable cause and a warrant are not required. Defendants urge this court to hold that the reasonable suspicion standard applies in the present case and to find as a matter of law that the search of plaintiff's office, desk, and gym bag was reasonable.

In support of their position defendants cite several Ninth and Second Circuit opinions. As an initial matter the court notes that *Shaffer v. Field*, 339 F.Supp. 997 (C.D. Cal.1972), *aff'd*, 484 F.2d 1196 (9th Cir. 1973), and *Los Angeles Police Protective League v. Gates*, 579 F.Supp. 36 (C.D.Cal. 1984), are inapposite. In *Shaffer* the dis-

trict court found that a search of a police officer's locker conducted pursuant to a homicide investigation did not violate his Fourth Amendment rights because the police officer did not have a constitutionally justifiable expectation of privacy in the locker. *Shaffer*, 339 F.Supp. at 1003. The court based its decision that the officer had no justifiable expectation of privacy in his locker on the fact that the lockers assigned to deputy sheriffs were owned by the department; that the locks given the deputies had both key and combinations but that the commander kept a master key and the combination to all locks; that the lockers and locks could be changed at will; and, that on at least three occasions in the past deputies' lockers had been searched by commanders without the deputies' permission. *Id.* at 1003. This court in its order of December 18, 1987, held that the undisputed evidence of record supports the conclusion that plaintiff had a reasonable expectation of privacy in his desk. Thus, *Shaffer* does not apply.

Similarly, *Los Angeles Police Protective League v. Gates* does not apply in the present case. In *Gates*, the court noted that it was not sure whether the blacklight search of plaintiff's hands and wallet for evidence of theft constituted a search. However, the court found that even assuming it was a search, under all the circumstances the blacklighting was reasonable and did not violate plaintiff Gibson's Fourth Amendment rights. *Gates*, 579 F.Supp. at 45.

The lawsuit in *Gates* arose out of a 1981–82 investigation by the Los Angeles Police Department into widespread corruption

---

**1.** A short summary of the facts relevant to plaintiff's case is in order. In January of 1983, plaintiff was a police officer with the City of Macon, Georgia. About this time, rumors began surfacing of certain illegal wiretapping going on within the police department. Defendants suspected that plaintiff Lowe was involved in the illegal wiretapping scheme, and so on January 30, 1983, pursuant to authorization from defendant Israel, defendants Elliot, Allen, Styles, and Foster entered the Macon Police Department's crime lab office where plaintiff worked, forced the lock on plaintiff's desk, searched the desk, and removed certain person-

al items that were suspected of containing evidence of illegal activity. A gym bag containing personal effects of plaintiff was also allegedly searched. Defendants did not have a warrant at the time of the search.

The search of plaintiff's desk uncovered no evidence of illegal wiretapping. Plaintiff thereafter took three lie detector tests. It is controverted as to whether plaintiff voluntarily consented to these tests or whether defendants threatened termination if plaintiff refused to take the tests. The investigation of plaintiff ended when another police officer admitted to the illegal activity.

among officers of the Hollywood Division. The investigation was conducted by the Internal Affairs Division (IAD). IAD set up a "sting" operation which resulted in the arrest of two officers as they left the "sting" site with stolen property. Several other Hollywood Division officers, including plaintiff Gibson, reported to the "sting" site. IAD questioned and searched those officers immediately after they returned to the station in order to discover whether any of them had stolen chemically-dusted money from the burglarized store. The search produced no evidence of theft by Gibson. In 1983, the plaintiff filed an amended complaint seeking relief under 42 U.S.C. § 1983 for violations of plaintiff's civil rights.

In reaching the conclusion that the blacklighting search of plaintiff Gibson's hands, uniform, and wallet did not violate his Fourth Amendment rights, the district court in *Gates* relied on exigent circumstances which are not present in the case *sub judice*. The court noted on the day of the blacklight searches IAD needed to determine immediately whether any of the officers who appeared at the "sting" site along with the officers arrested had stolen the chemically-dusted money. The court also noted that IAD knew someone had stolen the money, but did not know which officers were involved. Only by blacklighting the uniforms, hands, and wallets of the officers who appeared at the "sting" site could IAD determine which officers had been involved in a criminal violation of duty. Investigators could not have gotten a search warrant because they had no probable cause to suspect any particular officer in the group. Moreover, investigators needed to act quickly because the guilty officers could wash their hands and destroy evanescent evidence. The court held that in such a case a limited blacklighting search is permissible.

■ The case *sub judice* is not such a case. While there is a dispute regarding the search of plaintiff's gym bag, there is no doubt that there was a search of plaintiff's office and desk. There can also be no doubt that the search conducted in the present case is more intrusive than the blacklighting search in *Gates*. Moreover, the facts show that plaintiff Lowe was out of town at the time his office was searched. Therefore, there was no justifiable fear that any evidence of wrongdoing which might have been present in his office or desk was in immediate danger of being destroyed, thereby necessitating immediate police action. Nor was this a case where the police had no individualized suspicion regarding the identity of suspected offending officers. At the time of the search the investigation into the alleged illegal wiretapping had focused on plaintiff. There was no reason defendants could not have secured the premises pending plaintiff's return the following day. Thus, the court finds that the exigent circumstances used to justify the legality of the search in *Gates* are not present in the case *sub judice*. *Gates* is therefore inapposite.

■ The court further finds that the defendants' reliance on *Biehunik v. Felicetta*, 441 F.2d 228 (2nd Cir.), *cert. denied*, 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971), and *Kirkpatrick v. City of Los Angeles*, 803 F.2d 485 (9th Cir.1986), is misplaced. In *Biehunik*, the Second Circuit Court of Appeals upheld a procedure in which sixty-two police officers were forced to appear in a lineup for purposes of identification by persons who claimed they were assaulted by a police officer. The officers were chosen for the lineup because they had been on duty in the area where the alleged assault occurred. The Second Circuit found that the lineup was reasonable even though there was no probable cause to believe that any particular officer committed the alleged assault. *Biehunik*, 441 F.2d at 230.

Central to the court's conclusion that the lineup was "reasonable" was the substantial public interest in ensuring the appearance and actuality of police integrity. The court stated:

> We do not believe that the public must tolerate failure by responsible officials to seek out, identify, and appropriately discipline policemen responsible for brutal or unlawful behavior in the line of duty

merely because measures appropriate to those ends would be improper if they were directed solely toward the objective of criminal prosecution.

*Id.* at 230.

*Biehunik* was relied upon by the district court in *Gates* and is distinguishable for many of the same reasons. The investigation in *Biehunik* was an internal investigation of potentially serious misconduct by a police officer. While the investigation could have resulted in criminal charges being brought against the offending officer and the officers were given a warning to that effect, none of the plaintiffs contended that the purpose of the investigation was to gather evidence for criminal prosecution. Moreover, the nature of the seizure in *Biehunik* was far less intrusive than the conduct in the present case. Finally, the police department had no individualized suspicion regarding the identity of the offending officer. Because the court finds that the investigation in *Biehunik* was an internal investigation and not a criminal investigation the court does not find *Biehunik* to be persuasive in the present case.

In *Kirkpatrick v. City of Los Angeles,* two police officers were accused of stealing money from an arrestee. Based upon the allegations made by the arrestee, the officers' vehicles, pockets, wallets, and belts were searched at the site of the arrest. The search failed to uncover any evidence of wrongdoing. Upon arriving at the police station, Lieutenant Aggas ordered that the two officers be strip searched in order to protect the officers' records and the department's credibility. The officers objected to the strip search; however, the search was conducted over the officers' objections.

In *Kirkpatrick,* the Ninth Circuit Court of Appeals held:

Although police officers are not relegated to a watered down version of constitutional rights ... the government has an interest in police integrity which must be considered in evaluating the reasonableness of investigative searches of police officers.

*Id.* at 488. The court found that Lieutenant Aggas had no reasonable suspicion that the officers had money taken from the arrestee on their person. The court held that a reasonable suspicion exists when the person responsible for the search is aware of specific articulable facts and inferences from those fact, which reasonably warrant a suspicion that evidence will be uncovered. *Id.* at 490. The court found that under the circumstances the strip search conducted at the station violated the officers' Fourth Amendment rights. *Id.* However, the court also found that the officers' right not to be subjected to strip searches absent some quantum of suspicion was not clearly established at the time of the strip search. *Id.* at 491. Therefore, the court held that the Chief of Police and Lieutenant Aggas were immune from personal liability. *Id.* The court found that a question of fact existed regarding the city's liability and remanded the case to the district court for further proceedings.

*Kirkpatrick,* like *Biehunik,* involved an internal investigation and is thereby distinguishable from the present case. Unlike the plaintiff in the present case, the plaintiffs in *Kirkpatrick* did not contend that the purpose of the search was criminal in nature. In fact, the evidence clearly showed that the purpose for the search was to protect the officers' records and the department's credibility and not to uncover evidence of criminal wrongdoing. Thus, the court does not agree with defendants' contention that *Kirkpatrick* and *Biehunik* stand for the proposition that a reasonableness standard applies where there is mixed motivation for conducting a search.

This court's reading of *Kirkpatrick* and *Biehunik* is supported by the Seventh Circuit's recent opinion in *Shields v. Burge,* 874 F.2d 1201 (7th Cir.1989). In *Shields,* as part of an internal investigation aimed solely at discovering evidence that Shields had violated state police rules and regulations two officers of the Division of Internal Investigations searched Shields' office, state-issued automobile, and Shields' locked briefcase that was found in the automobile. The officers had neither a warrant nor Shields' consent to search the desk, auto-

mobile, or briefcase. Shields sued for damages under 42 U.S.C. § 1983 alleging that his civil rights had been violated during the internal investigation. The district court granted defendant's motion for summary judgment as to plaintiff's Fourth Amendment claim and dismissed count two for failure to state a claim. The Seventh Circuit Court of Appeals affirmed, holding in relevant part that the search of Officer Shield's desk and of his briefcase found in his automobile did not violate rights clearly established at the time of the search and thus the investigating officers were immune from damages. *Id.* at 1206.

In its opinion the Seventh Circuit described the strip search in *Kirkpatrick* as a work-related investigatory strip search. *Id.* In discussing *Biehunik,* the court explained the Second Circuit's holding referred to non-criminal searches and seizures which might otherwise violate the Fourth Amendment. *Id.*

Thus, the cases cited above involved purely internal investigations. The purpose of the searches and seizures on those cases was not to gather evidence for criminal prosecution, even though the possibility of criminal prosecution loomed in the background. Nor did any of the plaintiffs in those cases contend otherwise. It is the purpose behind the search which is controlling as to which standard, probable cause, or reasonable suspicion will be applied. In the present case, the purpose behind the search is in dispute.

The purpose behind the search is an issue of material fact to be decided by a jury. For the reasons stated above and those in the court's initial order of December 18, 1987, defendants' motion for summary judgment is again DENIED.

SO ORDERED.